IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

RICKY L. STICKLEY,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C13-2032

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.    *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    *PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . . 2

III.    *PRINCIPLES OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    *FACTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    A.    *Stickley's Education and Employment Background* . . . . . . . . . . . 5
    B.    *Administrative Hearing Testimony* . . . . . . . . . . . . . . . . . 6
        1.    *Stickley's Testimony* . . . . . . . . . . . . . . . . . . . . . 6
        2.    *Vocational Expert's Testimony* . . . . . . . . . . . . . . . . 8
    C.    *Stickley's Medical History* . . . . . . . . . . . . . . . . . . . . 9

V.    *CONCLUSIONS OF LAW* . . . . . . . . . . . . . . . . . . . . . . . . 12
    A.    *ALJ's Disability Determination* . . . . . . . . . . . . . . . . . 12
    B.    *Objections Raised By Claimant* . . . . . . . . . . . . . . . . . 14
        1.    *Substance Abuse* . . . . . . . . . . . . . . . . . . . . . . 15
        2.    *Dr. Garrelts' Opinions* . . . . . . . . . . . . . . . . . . . 19
        3.    *Credibility Determination* . . . . . . . . . . . . . . . . . 22
    C.    *Reversal or Remand* . . . . . . . . . . . . . . . . . . . . . . . 25

VI.    *CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

VII.    *ORDER* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Ricky L. Stickley on April 25, 2013, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits. Stickley asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Stickley requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On December 29, 2009, Stickley applied for both disability insurance benefits and SSI benefits. In his applications, Stickley alleged an inability to work since October 31, 2007 due to anxiety, depression, and bipolar disorder. Stickley's applications were denied on February 18, 2010. On May 5, 2010, his applications were denied on reconsideration. On May 27, 2010, Stickley requested an administrative hearing before an Administrative Law Judge ("ALJ"). On September 9, 2011, Stickley appeared via video conference with his attorney before ALJ Jo Ann L. Draper for an administrative hearing. Stickley and vocational expert Vanessa May testified at the hearing. In a decision dated November 21, 2011, the ALJ denied Stickley's claims. The ALJ determined that Stickley was not disabled and not entitled to disability insurance benefits or SSI benefits because if he stopped his substance use, he would be capable of performing his past relevant work as a construction worker or commercial cleaner. Stickley appealed the ALJ's decision. On February 22, 2013, the Appeals Council denied Stickley's request for review. Consequently, the ALJ's November 21, 2011 decision was adopted as the Commissioner's final decision.

On April 25, 2013, Stickley filed this action for judicial review. The Commissioner filed an Answer on September 3, 2013. On October 3, 2013, Stickley filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing his past relevant work as a construction worker or commercial cleaner. On December 2, 2013, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On December 12, 2013, Stickley filed a reply brief. On July 15, 2013, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Title 42, United States Code, Section 405(g) provides that the Commissioner's final determination following an administrative hearing not to award disability insurance benefits is subject to judicial review. 42 U.S.C. § 405(g). Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). Title 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*,

674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir.

4

2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Stickley's Education and Employment Background

Stickley was born in 1960. In response to his attorney's questioning regarding his education, Stickley testified that "I got a GED when I was in MHI in Independence. And, when I was in Anamosa, they had Kirkwood Community College and I did my credits and they gave me a high school diploma."[1] Stickley also testified that he is capable of performing simple math problems, and is able to read, write, and speak the English language.

The record contains a detailed earnings report for Stickley. The report covers the time period from 1976 to 2010. Prior to 1979, Stickley had minimal earnings (less than $800). From 1979 to 1981, he earned between $2,372.18 (1981) and $10,071.78 (1980). He had no earnings from 1982 to 1986. In 1987, Stickley earned $3,252.25. He had minimal earnings from 1988 to 1990 (less than $675), and no earnings in 1991. From 1992 to 1999, he earned between $750.00 (1995) and $14,521.23 (1998). He, again, had no earnings in 2000. From 2001 to 2003, he earned between $1,729.31 (2003) and $12,995.98 (2002). Stickley had no earnings in 2004 through 2006. In 2007, he earned $7,327.49. He had no earnings in 2008, but earned $753.04 in 2009. He had no earnings in 2010.

---

[1] Administrative Record at 37.

## B. Administrative Hearing Testimony

### 1. Stickley's Testimony

At the administrative hearing, Stickley's attorney asked Stickley to explain his living arrangements. Stickley informed the ALJ that he lived at a mental health residential facility which provided classes for substance abuse. Stickley's attorney observed that Stickley had lost weight since living at the residential facility. Stickley explained that "I've been not going down to eat at the cafeteria. I buy food from the grocery store. We go shopping once a week, supervised, and I just can't be around people. I usually go to my room and eat[.]"[2]

Next, Stickley's attorney asked Stickley to describe his difficulties with alcohol and substance abuse:

> Q: . . . Tell the Judge about the situation you had at home and when you first got hooked on drugs and what you're whole experience has been?
>
> A: Well, my dad's an alcoholic and my mom and my brother and sister are too, I know. And, I feel they have the same problems as I. I've seen my dad stab himself one time with a butcher knife. The night he shot himself with a .22, I didn't see it, but I heard it and my grandparents lived across the street, so, my mother would get us with our pajamas and throw on our coats and she would bring me over to my grandma's house with my brother[] and sister. And then, the ambulance and the police would come and, for me to cope with that, I was very shy in school because of the things that happened at home. And, for me to get over the shyness, I started drinking around fifth grade, I believe it was.
>
> Q: You were drinking alcohol in fifth grade?

---

[2] Administrative Record at 33.

A:   Yeah.  The first time I drank it was at my other grandparents in Allison, Iowa.  My grandpa was an alcoholic.

Q:   And, he gave you alcohol in fifth grade?

A:   Yeah.  They used to have Olympia beer and that used to be in a small can and I always thought that was fascinating because they made beer in a small can like that.  And, my grandpa, it'd be hot out and he would give us a sip of beer and then I would feel the affect of it.  And then, my uncle lived with them and he had liquor in the cabinet and I would sneak in there and drink out of his bottles sometimes.

Q:   This was when you were in fifth grade?

A:   Yes, I was fifth/sixth grade. . . .

Q:   The first time you had substance abuse, you started using illegal drugs, you said was seventh grade, . . . And, what drugs were you introduced to?

A:   . . . The first time I did, I smoked marijuana. . . .

Q:   And, you graduated, as time went on, to other drugs?

A:   Yes.  There was other drugs that came in our town.  I only hung around with a certain few people and they were the people that drank and used drugs in that town.  And, they always told us we were the bad people and I think that had a lot on my self esteem too as growing up.

Q:   What drugs were you introduced to after marijuana?

A:   When I was younger, we used to do acid.  We did, every once in a while, there would be cocaine. . . .

Q:   And, did you all start using methamphetamines and cocaine, that kind of stuff?

A:   The first time, I used speed when I was younger, like . . . black beauties they called them. . . .  In 2002, I was introduced to methamphetamines.  And, it took me about a year and I got in trouble with it and then I got 15 years in prison.  And, they sent me to prison and I did 42 months the first time and five months in the work release.  And then, they revoked me for drinking.  And, I went back and did 18 months and then I had to go to halfway house, which I went to the dual diagnosis

> program, which is for mental health and substance abuse[.]

(Administrative Record at 34-37.)

Stickley's attorney also inquired about Stickley's mental health issues. According to Stickley, he suffers from depression, "very bad" paranoia, and social anxiety. He stated "I can't be around people. I've always, when I did find work, I always tried to find a third shift job so I wouldn't be around people."[3] Stickley further stated that being around people causes him to have panic attacks. Specifically, Stickley testified that "I can't be around people in a large group or anything. I get very nervous, I stutter, I can't think of what I'm going to say."[4]

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual who:

> is limited to tasks that could be learned in 30 days or less involving no more than simple work-related decisions with few workplace changes. This individual should have no interaction with the public. Can have occasional interaction with coworkers. And, there should be no work at a production rate of pace.

(Administrative Record at 52-53.) The vocational expert testified that under such limitations, Stickley could perform his past work as a construction worker and commercial cleaner. The ALJ also asked the vocational expert to consider the same hypothetical with the following additional limitations: (1) the individual would need to work at a slow pace for one-third of the workday; (2) the individual would be absent from work three or more times per month; and (3) the individual would be unable to sustain attention and concentration for two-hour periods of time. The vocational expert testified that under such

---

[3] Administrative Record at 41.

[4] *Id.* at 42.

limitations, Stickley would be precluded from his past relevant work and any other competitive employment.

## C. Stickley's Medical History

On May 31, 2007, Stickley met with Dr. M.A. Chowdhry, M.D., feeling "down and depressed," unmotivated, and having trouble sleeping. Stickley also reported a history of substance abuse. Dr. Chowdhry noted that Stickley was attending AA and NA meeting and abstaining from alcohol and illegal drugs. Dr. Chowdhry also noted that Stickley "has a significant history of legal problems almost all of his life."[5] Upon examination, Dr. Chowdhry diagnosed Stickley with depressive disorder, history of alcohol and substance abuse, and anti-social personality traits. Dr. Chowdhry assessed Stickley with a GAF score of 55. Dr. Chowdhry recommended medication as treatment.

On January 24, 2008, Stickley met with Dr. William Nissen, M.D., for a psychiatric evaluation, with particular concern for mood disorder and anxiety symptoms. Dr. Nissen reviewed Stickley's mental health history:

> [Stickley] has been depressed and anxious for literally all of his life, probably dating to his preteen years, and says that he started using drugs to deal with it. He has been a heavy user of marijuana, alcohol, and Methamphetamine, and has had considerable distress in his life because of this. He has been arrested for an attempt to deliver Methamphetamine, two burglaries, forgery, driving while intoxicated, five OWIs, and public intoxication charges. He spent prison time in Anamosa five times, Fort Madison for two years, and at Newton in a minimum security facility, and currently is on parole until September 2010.

(Administrative Record at 280.) Upon examination, Dr. Nissen opined that Stickley "is a gentleman who has had probably a 35-plus year history of substance abuse and also has

_____

[5] Administrative Record at 363.

symptoms of anxiety, depression."[6] Dr. Nissen diagnosed Stickley with depression, multi-substance abuse disorder, and anxiety with generalized symptoms and social phobic symptoms. Dr. Nissen assessed Stickley with a GAF score of 60. Dr. Nissen recommended medication as treatment.

On September 22, 2009, Stickley entered a residential facility. His mental health and substance abuse history was assessed by Theresa Ross, Stickley's mental health counselor at the facility:

> [Stickley] reports starting to drink alcohol at the age of nine, becoming a problem in his early twenties when he started drinking daily. He reports his first marijuana use in junior high, mainly recreational use. [He] first used Methamphetamine in 2002 and began using heavily in 2003 prior to picking up charges and going to prison. . . . [Stickley] reports that he has never held a job for very long, the longest was two years. . . .
>
> [Stickley] reports that he is a quiet person and doesn't care to be around people. He finds fishing and reading to be meaningful.

(Administrative Record at 320.) Ross diagnosed Stickley with depressive disorder, generalized anxiety disorder, alcohol dependence, amphetamine dependence, and anti-social personality disorder. Ross assessed Stickley with a GAF score of 50. Ross recommended regular therapy and medication management as treatment.

On February 17, 2010, Dr. Carole Kazmierski, Ph.D., reviewed Stickley's medical records and provided Disability Determination Services ("DDS") with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Stickley. On the psychiatric review technique assessment, Dr. Kazmierski diagnosed Stickley with depressive disorder, generalized anxiety disorder, anti-social personality

---

[6] Administrative Record at 281.

disorder, and history of polysubstance dependence, reportedly in remission. Dr. Kazmierski determined that Stickley had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. On the mental RFC assessment, Dr. Kazmierski determined that Stickley was moderately limited in his ability to: understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. Dr. Kazmierski concluded that:

> When abstinent and treatment compliant, [Stickley] has the ability to perform a range of simple, routine tasks of an unskilled nature. He can tolerate brief, superficial interactions with others, but will probably do best in settings where interpersonal demands are minimal.

(Administrative Record at 384.)

In a letter that is not dated, Dr. Deborah Garrelts, M.D., a treating source, responded to questions from Stickley's attorney regarding Stickley's functional abilities. Dr. Garrelts opined that if Stickley remained abstinent from alcohol and illegal drugs, then he is capable of part-time work. Specifically, Dr. Garrelts stated that "the job would need to remain low stress, with limited hours."[7] Dr. Garrelts further opined that:

---

[7] Administrative Record at 470.

> Even with [Stickley's] limitations it is felt that he would be
> able to work at a consistent pace throughout the work day
> and/or work week. [He] may be absent from work more than
> three or more times per month if he were to have a
> reoccurrence of symptoms and/or if non-compliant or relapses.

(Administrative Record at 470.)  Dr. Garrelts also determined that Stickley was capable of sustaining attention and concentration for two-hour segments, but "it would not be possible for [him] to complete an ordinary day of eight hours and an ordinary week of 40 hours without interruption from his symptoms."[8]  Dr. Garrelts felt that working an eight-hour workday, 40-hour per week job would be too stressful for Stickley, and would lead him to decompensate.

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Stickley is not disabled.  In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations.  *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007).  The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the
> claimant has a severe impairment, (3) whether the impairment
> meets the criteria of any Social Security Income listings,
> (4) whether the impairment prevents the claimant from
> performing past relevant work, and (5) whether the
> impairment necessarily prevents the claimant from doing any
> other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R.

---

[8] *Id.*

§§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n.3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description

of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined that Stickley had not engaged in substantial gainful activity since October 31, 2007. At the second step, the ALJ concluded from the medical evidence that Stickley had the following severe impairments: depression, anxiety, anti-social personality disorder, alcohol abuse with relapses, and a history of amphetamine abuse. At the third step, the ALJ found that Stickley's impairments, including his subtance use disorder, meet sections 12.04 and 12.09 of 20 C.F.R. Pt. 404, Subpt. P, App. 1. However, also at step three, the ALJ determined that if Stickley stopped his substance use, he would not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined that if Stickley stopped his substance use, his RFC would be as follows:

> [He] would have the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: tasks that can be learned in thirty days or less involving no more than simple work-related decisions with few work place changes; work requiring no interaction with the public and occasional interaction with co-workers; and no work at production-rate pace.

(Administrative Record at 17.) Also at the fourth step, the ALJ determined that if Stickley stopped his substance use, he would be capable of performing his past relevant work as a construction worker or commercial cleaner. Therefore, the ALJ concluded that Stickley was not disabled.

### B. Objections Raised By Claimant

Stickley argues that the ALJ erred in three respects. First, Stickley argues that the ALJ's finding that his substance use was a contributing factor material to the determination of disability was not based on substantial evidence. Second, Stickley argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Garrelts. Lastly,

Stickley argues that the ALJ failed to properly evaluate his subjective allegations of disability.

### 1. *Substance Abuse*

Stickley asserts that in this case, the "crucial" issue for determining whether his substance use was a factor material to the determination of disability is "whether [he] was 'doing well' because he was not drinking or 'doing well' because he was not institutionalized."[9] Stickley maintains that an ALJ is required to consider a claimant's ability to function outside a structured setting, such as a residential facility, because living in such structured settings may minimize overt symptoms and signs of an underlying mental disorder. Thus, an individual living in a structured setting may be more impaired for work than his or her signs and symptoms indicate. Stickley contends that by failing to address or consider his institutionalization, the ALJ's determination that his substance use is a material contributing factor to his disability is not supported by substantial evidence. Stickley concludes that this matter should be "reversed and remanded for further development of the record regarding the effects of substance abuse and a highly structured environment on [his] ability to work."[10]

In 1996, Congress amended the Social Security Act to eliminate benefits for disabilities arising from addiction to alcohol or other drugs. *See* Pub. L. No. 104-121, 110 Stat. 847; *see also Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (discussing the 1996 Congressional amendment); *Jackson v. Apfel*, 162 F.3d 533, 537 (8th Cir. 1998) (same). The regulations implemented this law at 20 C.F.R. § 404.1535 (relating to applications for disability insurance benefits) and 20 C.F.R. § 416.935 (relating to applications for SSI benefits). The two sections are identical and provide as follows:

---

[9] Stickley's Brief (docket number 10) at 13.

[10] *Id.*

How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

> (1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

> (2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

> (i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

> (ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535, 416.935.

According to the regulations, the ALJ must first determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1535, 416.935 ("*If we find that you are disabled* and have

medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." (emphasis added)). "The ALJ must reach this determination initially . . . using the five-step approach described in 20 C.F.R. § 404.1520 without segregating out any effects that might be due to substance use disorders." *Brueggemann*, 348 F.3d at 694 (citation omitted).

If the ALJ determines that all of a claimant's limitations, including the effects of substance use disorders, show that the claimant is disabled, then the ALJ "must next consider which limitations would remain when the effects of the substance use disorders are absent." *Id.* at 694-95 (citing *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000); 20 C.F.R. § 404.1535(b)(2)). "The focus of the inquiry is on the impairments remaining if the substance abuse ceased, and whether those impairments are disabling, regardless of their cause." *Pettit*, 218 F.3d at 903 (citations omitted). The claimant carries the burden of proving that alcoholism or drug addiction is not a material factor to the finding of disability. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) (citing *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000)). "If the ALJ is unable to determine whether substance abuse disorders are a contributing factor material to the claimant's otherwise-acknowledged disability, the claimant's burden has been met and an award of benefits must follow. . . . In colloquial terms, on the issue of materiality of alcoholism, a tie goes to [the claimant]." *Brueggemann*, 348 F.3d at 693 (citation omitted). Accordingly, the ALJ is required to develop a full and fair record and support his or her conclusions with substantial evidence. *Id.* at 695. In summary, "[o]nly after the ALJ has made an initial determination 1) that [the claimant] is disabled, 2) that drug or alcohol use is a concern, and 3) that substantial evidence on the record shows what limitations would remain in the absence of alcoholism or drug addiction, may [the ALJ] then reach a conclusion on

whether [the claimant's] substance use disorders are a contributing factor material to the determination of disability." *Id.*

Here, the ALJ followed the analytical framework set forth in the regulations. The ALJ first applied the five-step sequential evaluation process for determining whether an individual is disabled, and determined that Stickley was disabled based on his impairments, including his substance abuse disorder.[11] Next, the ALJ determined that if Stickley stopped the substance use, he would continue to have a severe impairment or combination of impairments.[12] The ALJ concluded, however, that absent the substance use, Stickley's remaining limitations were not disabling.[13] In his brief, Stickley argues that the ALJ's substance abuse analysis is flawed because the ALJ failed to take into consideration his improved mental health while living in structured settings. The Court is unconvinced by Stickley's argument. While it is true that living in a structured setting may be a factor in Stickley's improved mental health, it is also true that Stickley abstained from alcohol and drugs in such settings, and his abstention from drugs and alcohol also contributed to his improved mental health. Accordingly, the Court finds no flaw in the ALJ's substance abuse analysis. *See Brueggemann*, 348 F.3d at 695.

Therefore, having reviewed the entire record, the Court finds that the ALJ properly analyzed the issue of Stickley's substance abuse in accordance with both the law and Social Security Regulations. At this point, however, the Court makes no determination on the ALJ's conclusion that absent the substance use, Stickley is not disabled. Instead, the Court will address the remaining issues raised by Stickley on appeal, and determine whether

---

[11] *See* Administrative Record at 15-16.

[12] *Id.* at 16.

[13] *Id.* at 16-21.

absent substance use there is substantial evidence on the record as a whole to support the ALJ's disability determination.

### 2. Dr. Garrelts' Opinions

Stickley argues that the ALJ failed to properly evaluate the opinions of his treating physician, Dr. Garrelts. Specifically, Stickley argues that the ALJ's reasons for discounting Dr. Garrelts' opinions are not supported by substantial evidence in the record. Stickley concludes that this matter should be remanded for further consideration of Dr. Garrelts' opinions.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id.*.); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by

superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ addressed the opinions of Dr. Garrelts as follows:

> As for opinion evidence, the record contains a statement from [Stickley's] psychiatrist[,] Dr. Garrelts. If [Stickley] were to remain abstinent, Dr. Garrelts opined that he would be able to work "part time." The doctor found that it was not possible for [Stickley] to complete an ordinary eight-hour workday or forty-hour workweek without interruption from his symptoms due to stress. The doctor noted that, "the job would need to remain low stress, with limited hours." However, Dr. Garrelts stated that [Stickley] was presently doing well in his jobs at Prairie View. Dr. Garrelts found that even with [Stickley's] limitations he would be able to work at a

consistent pace throughout the workday and workweek. In addition, Dr. Garrelts found [Stickley] would be able to "sustain attention and concentration for two hour periods without his signs and symptoms interfering with his ability to work." While the doctor noted that [Stickley] "may possibly be absent from work more than three or more times per month", this would only result if he were to have relapses. However, the undersigned finds that the opinions of Dr. Garrelts are inconsistent with the objective medical record in this case. As discussed in detail above, treatment records indicated that [he] reported he was doing well while abstaining from substance use. More specifically, during an examination with Dr. Garrelts [Stickley] reported doing well despite experiencing significant life stress with his brother being arrested. As such, the undersigned affords the opinion of Dr. Garrelts little weight.

(Administrative Record at 19.)

In reviewing the ALJ's decision, the Court bears in mind that an ALJ has a duty to develop the record fully and fairly. *Cox*, 495 F.3d at 618. Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quotation omitted). Furthermore, if an ALJ rejects the opinions of a treating physician, the regulations require that the ALJ give "good reasons" for rejecting those opinions. *See* 20 C.F.R. § 404.1527(d)(2).

The Court finds that the ALJ has not fully met these requirements. First, the fact that in her treatment notes, Dr. Garrelts found Stickley to be "doing well" at his 13.5-hour per week job at a residential facility, does not support a conclusion that Dr. Garrelts believed Stickley could perform full-time work. In fact, Dr. Garrelts opined the opposite and specifically found that Stickley could *only* perform *part-time* work.[14] Moreover, Dr. Garrelts specifically opined that "it would not be possible for [him] to complete an

---

[14] *See* Administrative Record at 470.

ordinary day of eight hours and an ordinary week of 40 hours without interruption from his symptoms."[15] Dr. Garrelts felt that working an eight-hour workday, 40-hour per week job would be too stressful for Stickley, and would lead him to decompensate. Second, having determined that Stickley is only capable of part-time work, it is only logical that Dr. Garrelts' opinions that Stickley could pay attention and concentrate while working and work at a consistent pace is applicable to part-time work, not full-time employment. Lastly, the ALJ points to nothing in the record to support her assertion that Dr. Garrelts' opinion that Stickley is limited to only part-time work is inconsistent with the objective medical evidence in the record. Furthermore, a claimant who reports to his or her treating doctor that he or she is "doing well" while abstaining from alcohol and/or drugs is not by itself evidence that he or she is capable of full-time employment. Especially, as is the case here, where Stickley's treating doctor limited him to part-time work, and the record provides that Stickley worked 13.5 hours per week at a residential facility.

Therefore, the Court concludes the ALJ has failed to give "good reasons" for rejecting the opinions of Dr. Garrelts. *See Tilley*, 580 F.3d at 680 ("The regulations require the ALJ to 'always give good reasons' for the weight afforded to the treating source's opinion."). The Court further finds that the ALJ failed in her duty to fully and fairly develop the record with regard to Dr. Garrelts' opinions. Accordingly, the Court determines that this matter should be remanded for further consideration of Dr. Garrelts' opinions. On remand, the ALJ shall provide clear reasons for accepting or rejecting Dr. Garrelts' opinions and support her reasons with evidence from the record.

### 3. *Credibility Determination*

Stickley argues that the ALJ failed to properly evaluate his subjective allegations of disability. Stickley maintains that the ALJ's credibility determination is not supported by

---

[15] *Id.*

substantial evidence. The Commissioner argues that the ALJ properly considered Stickley's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman*, 596 F.3d at 968; *see also Finch*, 547 F.3d at 935 (same); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford*, 518 F.3d at 982 (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*,

353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001) (citing *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996)); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In her decision, the ALJ determined that:

> If [Stickley] stopped the substance use, the undersigned finds that [Stickley's] medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Stickley's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment for the reasons explained below.

(Administrative Record at 19.)

In her decision, the ALJ minimally sets forth the law for making a credibility determination under the Social Security Regulations.[16] Significantly, the ALJ failed to apply the law in determining the credibility of Stickley's testimony and subjective allegations. Specifically, the Court finds that the ALJ's decision lacks the required detail for discrediting a claimant and explaining the inconsistencies between the claimant's

---

[16] *See* Administrative Record at 17.

subjective allegations and the record as a whole. *See Renstrom*, 680 F.3d at 1066; *Ford*, 518 F.3d at 982; *see also Pelkey*, 433 F.3d at 578 (the ALJ must give reasons for discrediting a claimant). The ALJ offers nothing in terms of the *Polaski* factors and how those factors relate to Stickley's subjective testimony and credibility. The ALJ simply states that Stickley's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment[.]"[17] As discussed in section *V.B.2*, the ALJ failed to fully and fairly develop the record with regard to Dr. Garrelts' opinions, and did not properly consider Dr. Garrelts' opinions in making her RFC assessment for Stickley. Thus, the Court finds the ALJ's reliance on her RFC assessment for Stickley to be inadequate for supporting her credibility finding.

Because the ALJ's decision lacks any discussion of the reasons for discrediting Stickley, except that his allegations are inconsistent with the ALJ's RFC assessment, and lacks full consideration of *Polaski* or any of the *Polaski* factors, the Court finds that remand is appropriate for the ALJ to further develop the record with regard to Stickley's credibility. On remand, the ALJ shall set forth in detail her reasons for finding Stickley's subjective allegations to be credible or not credible. If on remand, the ALJ finds Stickley's testimony not to be credible, the ALJ shall fully explain the reasons for her credibility determination and fully explain the inconsistencies between Stickley's subjective allegations and the evidence in the record.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying,

---

[17] Administrative Record at 19.

> or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ simply failed to: (1) fully and fairly develop the record with regard to Dr. Garrelts' opinions; and (2) make a proper credibility determination in this matter. Accordingly, the Court finds that remand is appropriate.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must fully and fairly develop the record with regard to Dr. Garrelts' opinions. The ALJ must also consider all of the evidence relating to Stickley's subjective allegations of disability, address her reasons for crediting or discrediting those allegations, and properly apply the *Polaski* factors when determining Stickley's credibility.

## *VII. ORDER*

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 7th day of March, 2014.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA